ORIGINAL

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1  Andrew M. Holmes (Bar No. 260475)
   drewholmes@quinnemanuel.com
2  **QUINN EMANUEL URQUHART & SULLIVAN, LLP**
   50 California Street, 22nd Floor
3  San Francisco, California 94111-4788
   Telephone:    (415) 875-6600
4  Facsimile:    (415) 875-6700
5
6  Patrick D. Curran (Bar No. 241630)
   patrickcurran@quinnemanuel.com
7  **QUINN EMANUEL URQUHART & SULLIVAN, LLP**
   51 Madison Avenue, 22nd Floor
8  New York, New York 10010
   Telephone:    (212) 849-7000
9  Facsimile:    (212) 849-7100
10
11 Zachariah B. Summers (Bar No. 255284)
   zachariahsummers@quinnemanuel.com
12 **QUINN EMANUEL URQUHART & SULLIVAN, LLP**
   865 South Figueroa Street, 10th Floor
13 Los Angeles, California 90017-2543
   Telephone:    (213) 443-3000
14 Facsimile:    (213) 443-3100
15 *Attorneys for Plaintiff*
   QUALCOMM INCORPORATED

FILED

MAR - 6 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

CV 19 80057 MISC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

VKD

| | |
|---|---|
| 20 IN RE SUBPOENA ISSUED TO:<br>Intel Corporation<br><br>21 In the Case of:<br>22<br>23 QUALCOMM INCORPORATED,<br>24     Plaintiff,<br>25     vs.<br>26 APPLE INCORPORATED,<br>27     Defendant. | Case No. MISC<br><br>Related to Case No. 3:17-CV-02398-DMS-MDD<br><br>Pending in: The United States District Court for the Southern District of California<br><br>**NOTICE OF MOTION AND QUALCOMM INCORPORATED'S MOTION TO COMPEL COMPLIANCE WITH DOCUMENT SUBPOENA TO INTEL** |

28

Case No. MISC

1  **NOTICE OF MOTION AND MOTION**

2  TO INTEL CORP. AND ITS COUNSEL OF RECORD:

3  PLEASE TAKE NOTICE that on March 27, 2019 at a time to be determined by the Court,

4  or as soon thereafter as counsel may be heard, in a Courtroom to be assigned, located in the United

5  States Courthouse located at 450 Golden Gate Ave, San Francisco, California, 94102, Qualcomm

6  Incorporated ("Qualcomm") shall and hereby does move the Court for an order, pursuant to

7  Federal Rule of Civil Procedure 45, to enforce the document subpoena served on Intel Corp.

8  ("Intel") on January 18, 2019.

9  This Motion is made on the following grounds:

10  In its subpoena, Qualcomm requested documents and testimony relating to Intel

11  components used in Defendant Apple Inc.'s ("Apple's") accused products that provide

12  functionality relevant to Qualcomm's patent infringement claims.  Specifically, Qualcomm

13  requested documents relating to Intel's radio frequency ("RF") components used, or planned for

14  use, in Apple mobile products from 2016 through 2018.  The requested documents are relevant to

15  direct and indirect infringement as well as damages.

16  Intel refuses to provide documents relating to its RF components for 2018 Apple mobile

17  products.  Intel also claims that its burden of producing responsive documents has been satisfied

18  via cross-use with its productions in related International Trade Commission Investigations.  The

19  parties met and conferred on several occasions, including on February 20, 2019, and via follow up

20  correspondence on February 21, 2019 and February 28, 2019, but the parties have been unable to

21  reach a resolution regarding the appropriate scope of Intel's obligations to provide discovery in

22  this case.

23  Pursuant to Local Rule 37-1, Qualcomm certifies that it has met and conferred in good

24  faith in an attempt to narrow and/or resolve its dispute with Intel.

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................................1

II.   FACTUAL BACKGROUND ................................................................................................3

      A.    Summary Of The Patent Infringement Actions..........................................................3

            1.    The 1065 ITC Investigation and 1375 Litigation ...........................................3

            2.    The 1093 ITC Investigation and 2398 Litigation ...........................................4

      B.    Discovery From Intel In The 2398 Litigation ............................................................5

            1.    Intel Delayed Making Critical Discovery Available for Qualcomm
                  to Amend its Infringement Contentions...........................................................5

            2.    Intel Continues to Delay Producing Responsive Documents, Despite
                  Qualcomm's Efforts to Significantly Narrow the Scope of Its
                  Requests ...........................................................................................................7

III.  LEGAL STANDARD ..........................................................................................................11

IV.   ARGUMENT ......................................................................................................................11

      A.    Qualcomm's Document Requests Seek Information That Is Highly
            Relevant, Necessary, And Narrowly Tailored ...........................................................11

            1.    Technical Documents Not Produced In The Companion
                  Investigations ................................................................................................12

            2.    Documents Related to Intel's PMB 5762 And Future Products ..................16

            3.    Documents Related to Damages and Injunctive Relief..................................18

      B.    Qualcomm Has Taken Reasonable Steps To Limit Intel's Burden Of
            Compliance With Qualcomm's Document Requests................................................21

V.    CONCLUSION ...................................................................................................................23

MOTION TO COMPEL COMPLIANCE WITH SUBPOENA

1

## TABLE OF AUTHORITIES

2

**Page**

3

### CASES

4

5   *Aristocrat Techs. v. Int'l Game Tech.,*
        No. 06-cv-03717-RMW (RS), 2009 WL 3573327 (N.D. Cal. Oct. 30, 2009) ........ 16, 17, 18

6

7   *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.,*
        807 F.3d 1283 (Fed. Cir. 2015) ........................................................................ 19

8   *Compaq Computer Corp. v. Packard Bell Electronics, Inc.,*
        163 F.R.D. 329 (N.D. Cal. 1995) ..................................................................... 11

9

10  *DR Sys., Inc. v. FujiFilm Med. Sys. USA, Inc.,*
        No. 06cv417 JLS (NLS), 2008 WL 1734241 (S.D. Cal. Apr. 10, 2008) ............. 17

11  *Epicrealm Licensing, LLC v. Autoflex Leasing, Inc.,*
        2007 WL 2580969 (E.D. Tex. 2007) ................................................................ 18

12

13  *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC,*
        879 F.3d 1332 (Fed. Cir. 2018) ........................................................................ 21

14  *Fresenius USA, Inc. v. Baxter Intern., Inc.,*
        582 F.3d 1288 (Fed. Cir. 2009) ........................................................................ 20

15

16  *Georgia-Pacific Corp. v. U.S. Plywood Corp.,*
        318 F. Supp. 1116 (S.D.N.Y. 1970) ............................................... 10, 17, 19, 20

17  *In re Google Litig.,*
        No. C 08-03172, 2011 WL 286173 (N.D. Cal. Jan. 27, 2011) ........................... 17

18

19  *L.G. Elec., Inc. v. Q-lity Computer, Inc.,*
        211 F.R.D. 360 (N.D. Cal. 2002) ..................................................................... 18

20  *L.G. Philips LCD Co., Ltd. v. Tatung Co.,*
        No. 07-cv-80073-WHA, 2007 WL 869256 (N.D. Cal. Mar. 20, 2007) ....... 17, 22

21

22  *Negotiated Data Solutions, LLC v. Dell, Inc.,*
        No. C09-80012, 2009 WL 733876 (N.D. Cal. Mar. 17, 2009) ........................... 11

23  *Oracle America, Inc. v. Google Inc.,*
        No. C 10-03561 WHA, 2011 WL 6055505 (N.D. Cal. Dec. 6, 2011) ................. 21

24

25  *Panduit Corp. v. Stahlin Bros Fibre Works, Inc.,*
        575 F.2d 1152 (6th Cir. 1978) ......................................................................... 19

26  *Realtime Data LLC v. Echostar Corp.,*
        No. 6:17-CV-00084-JDL, 2018 WL 6266301 (E.D. Tex. 2018) ........................ 20

27

28  *Realtime Data LLC v. NetApp, Inc.,*
        No. 6:16-CV-00961-RWS, 2017 WL 5756863 (E.D. Tex. 2017) ....................... 21

*Sirota v. Penske Truck Leasing Corp.*,
   No. C05-03296 SI, 2006 WL 708910 (N.D. Cal. Mar. 17, 2006)................................ 11

*Spring Comm'ns Co., LP v. Time Warner Cable, Inc.*,
   2018 WL 6266319 (Fed. Cir. Nov. 30, 2018)............................................. 10, 20

*Truswal Systems Corp. v. Hydro–Air Engineering, Inc.*,
   813 F.2d 1207 (Fed. Cir. 1987)....................................................... 11

*Viacom Int'l, Inc. v. YouTube, Inc.*,
   No. C 08-81029 SI, 2008 WL 3876142 (N.D. Cal. Aug. 18, 2008) ..................... 21, 22

*ViaSat, Inc. v. Space Systems/Loral, Inc.*,
   No. 3:12-CV-00260-H (WVG), 2014 WL 11813868 (S.D. Cal. Feb. 21, 2014)............... 20

*Zygo Corp. v. Wyko Corp.*,
   79 F.3d 1563 (Fed. Cir. 1996)........................................................ 20

## RULES

Fed. R. Civ. P. 26(b)(2)(C)(iii)...................................................... 21

Fed. R. Civ. P. 34 .................................................................. 11

Fed. R. Civ. P. 45 ............................................................... 1, 11

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

This motion relates to a Rule 45 subpoena that Qualcomm Incorporated ("Qualcomm") served on Intel Corporation ("Intel") on January 18, 2019 in connection with an underlying case that is currently pending in the Southern District of California, *Qualcomm v. Apple Inc.*, Case No. 3:17-cv-02398 (S.D. Cal.) ("2398 Litigation"). *See* Ex. A.  Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Qualcomm respectfully moves this Court for an order compelling Intel to produce documents and materials responsive to Qualcomm's subpoena, which has been narrowed and clarified through the meet and confer process.

Qualcomm seeks information about the radio frequency ("RF") components that Intel provides for Apple-branded mobile devices, including the Apple products at issue in the 2398 Litigation.  The Intel RF components perform certain functionalities accused of infringement in the 2398 Litigation.  Qualcomm's subpoena seeks information uniquely within Intel's possession, custody, and control that relates to Intel's RF components.  Qualcomm has worked with Intel to minimize burdens and obviate disputes — including by narrowing its requests to a specific set of limited, targeted documents and information.  *See* Ex. D (Feb. 5, 2019 Email from Summers); Ex. C (Feb. 19, 2019 Email from Summers).  Specifically, Qualcomm seeks the following narrow categories of documents from Intel:

- Technical documents that were not produced by Apple or Intel during the prior litigation but are relevant relate to Apple's later-made non-infringement arguments;

- Updated versions of technical documents that were previously produced;

- Documents regarding Intel's PMB 5762, an RF component in Apple products that were recently released after the close of discovery in a related ITC Investigation; and

- Information related to damages, which was not at issue in prior litigations between the parties.

Intel has repeatedly refused to produce this information, claiming without explanation that Qualcomm's document requests are "overbroad, duplicative, and irrelevant," and asserting

-1-

Case No. MISC

1  (counterfactually) that Qualcomm "did not narrow the Document Requests" in the subpoena.[1]  Ex.

2  B (Feb. 19, 2019 Email from O'Grady).  As a result, Qualcomm respectfully requests an order

3  requiring Intel to provide the requested information.

4       The documents Qualcomm seeks are highly relevant to the technical details of the Intel

5  components in the accused mobile devices, including the implementation of functionalities and

6  configurations described in the asserted patents.  The documents are also relevant to the

7  determination of damages and Qualcomm's request for injunctive relief.  Monetary damages are

8  not at issue in the ITC proceedings, so the 2398 Litigation is the first time damages will be

9  quantified for Apple's infringement of these patents.  Intel is uniquely situated to provide

10  information relevant to this inquiry.  As the manufacturer and supplier of the RF components

11  accused of infringement in Apple's devices, Intel has confidential financial information regarding

12  the components at issue and the market for those components.  Moreover, Intel has exclusive

13  supplemental technical information about these RF components that was not produced in the 1093

14  Investigation, including their operation, design, and structure, that is relevant to many issues in the

15  2398 Litigation.  That is the information Qualcomm seeks through its subpoena.

16       Qualcomm's document requests are not unduly burdensome, and are not duplicative of

17  discovery from the related ITC Investigations.  While Qualcomm did receive certain information

18  from Intel in the ITC Investigations, the remedies available in an ITC proceeding are limited to

19  exclusion orders – not monetary damages – and Qualcomm never sought, nor received, damages

20  discovery from Intel.  Moreover, there are additional and updated technical documents that Intel

21  has not yet produced to Qualcomm.  Qualcomm is amenable to cross-use of information wherever

22  possible, and has agreed to cross-use of previously-produced information related to liability.  But

23  Qualcomm cannot cross-use what Intel never provided.

24

25

26  [1]  On February 8, 2019, Intel filed a motion to quash Qualcomm's January 18, 2019 deposition subpoena, and Qualcomm filed its opposition brief on February 22, 2019.  *See* Case No. CV-19 80038-MISC (KAW).  Qualcomm did not file a cross-motion to compel documents at that time because the parties' meet and confer negotiations regarding the document subpoenas were ongoing.

27

28

1    Moreover, Qualcomm has already offered to narrow the scope of the subpoena to allay
2  Intel's objections to its alleged burden.  For example, Qualcomm narrowed its requests to only
3  cover issues that were not significant areas of focus in prior litigation. Ex. D (Feb. 5, 2019 Email
4  from Z. Summers); *see also* Ex. E (Feb. 28, 2019 Ltr. from Z. Summers).  Qualcomm further
5  narrowed its requests by proposing that no additional document production was necessary for
6  Request Nos. 53–67 with "only narrow exceptions for incomplete, missing, or out-of-date
7  information," as discussed by the parties.  Ex. C (Feb. 19, 2019 Email from Summers).
8  Qualcomm has made every effort to resolve disputes cooperatively, and is open to continued
9  discussion regarding ways to alleviate purported burdens on Intel.  But because Intel continues to
10  refuse production on the basis of alleged burden, without providing any evidence of the
11  supposedly undue burden Intel would face by producing the requested materials, Qualcomm seeks
12  this Court's assistance in receiving the requested information.

13    Because Intel's failure to provide relevant documents would prejudice Qualcomm and
14  prevent the development of a complete factual record in the 2398 Litigation, Qualcomm
15  respectfully requests that the January 18, 2019 subpoena be enforced.

16  **II.    FACTUAL BACKGROUND**

17    **A.    Summary Of The Patent Infringement Actions**

18    Qualcomm and Apple are currently engaged in a variety of lawsuits and investigations
19  related to Apple's infringement of Qualcomm-owned patents.  Although Intel is a non-party in
20  those proceedings, it supplies components to Apple that perform the accused functionalities, and it
21  has been deeply involved in the litigations between Qualcomm and Apple—including by
22  voluntarily providing witnesses to testify on Apple's behalf in multiple trials and hearings.

23    1.    The 1065 ITC Investigation and 1375 Litigation

24    Qualcomm filed a complaint for patent infringement against Apple in July 2017, in the
25  United States District for the Southern District of California (*Qualcomm Incorporated v. Apple
26  Inc.*, No. 17-1375 (S.D. Cal.) ("1375 Litigation")).  The following day, it requested the U.S.
27  International Trade Commission to institute an investigation of Apple's mobile electronic devices,

28

1  asserting the same patents (*Mobile Electronic Devices and Radio Frequency and Processing*

2  *Components Thereof*, Inv. No. 337-TA-1065 ("1065 Investigation")).[2]

3       Intel has been heavily involved in both the 1065 Investigation and the 1375 Litigation.  In

4  the 1065 Investigation, for example, Intel submitted two Statements on the Public Interest[3] and a

5  Statement in Response to the Commission's Notice of Determination to Review in Part A Final

6  Initial Determination Finding A Violation of Section 337.[4]  Moreover, four Intel employees

7  voluntarily testified as fact witnesses for Apple during the  1065 Hearing.[5]  In contrast, only one

8  Apple employee testified as a fact witness for Apple.  In the 1375 Litigation, which is scheduled to

9  begin trial on March 4, 2019, Apple anticipates it will call four Intel employees as fact witnesses

10 during the trial.  Ex. F (Case No. 3:17-cv-01375, Dkt. 523 (Apple Inc.'s Disclosure of Prospective

11 Witnesses)), at 1–4.  Furthermore, since the conclusion of the 1065 Hearing, Intel has submitted

12 more than 15 petitions to the Patent Trial and Appeal Board challenging the validity of the patents

13 at issue in the Investigation.  In those petitions, Intel has identified itself and Apple as real parties-

14 in-interest.  *See, e.g.*, Ex. G (Case IPR2018-01261 (Petition for *Inter Partes Review*)) at 1.

15          2.       The 1093 ITC Investigation and 2398 Litigation

16      Qualcomm filed a second complaint against Apple on November 29, 2017, in the United

17 States District Court for the Southern District of California (i.e. the 2398 Litigation), alleging that

18 a different group of Qualcomm patents are infringed by Apple's products.[6]  The following day,

19

20    [2]  The operative complaint in the 1375 Litigation asserts claims from five asserted patents:
     U.S. Patent No. 8,633,936, U.S. Patent No. 8,698,558, U.S. Patent No. 8,838,949, U.S. Patent No.
21   9,535,490, and U.S. Patent No. 9,608,675.

22    [3]  Exs. X, Y (ITC Inv. 337-TA-1065, Doc ID Nos. 617681, 6661395).

23    [4]  Ex. Z (ITC Inv. 337-TA-1065, Doc. ID No. 666399).

      [5]  The following Intel employees testified at the 1065 Hearing: Steven Bowers, Assistant
24   Director of Intel Product Assurance and Security Legal; Aichatou Evans, Senior Vice President
     and Chief Strategy Officer; Ulrich Leucht-Rother, Principal Engineer and Cellular System
25   Architect; and Martin Polak, Firmware Architect.  Exs. H, I, J (Inv. 337-TA-1065 Hearing
     Excerpts) (identifying Intel employees as Hearing witnesses).
26
      [6]  Although the accused products are limited to Apple products, Intel is implicated because it
27   provides radio frequency ("RF") components, including the baseband processor and RF
     transceiver, for accused Apple devices.
28

1  Qualcomm requested the ITC institute an investigation of Apple's mobile electronic devices,

2  asserting the same patents as the 2398 Litigation. (*Certain Mobile Electronic Devices and Radio*

3  *Frequency and Processing Components Thereof (II)*, Inv. No. 337-TA-1093 ("1093

4  Investigation")). The patents in the 2398 Litigation and the 1093 Investigation do not overlap

5  with those at issue in the 1065 Investigation.

6  　　　Due to the expedited schedule of ITC Investigations, discovery in the 1093 Investigation

7  proceeded at a faster pace than in the 2398 Litigation. But discovery in the 1093 Investigation was

8  focused on Apple's liability for patent infringement and the effects an exclusion order would have

9  on the public interest, not on potential monetary damages. Discovery in the 1093 Investigation

10  also ended before Apple released its 2018 mobile devices in September 2018.

11  　　　Intel was heavily involved in the 1093 Investigation despite being a "non-party." Intel

12  submitted a Statement on the Public Interest, *see* Ex. K (Intel's Statement on the Public Interest,

13  Doc ID No. 631513), two Intel employees[7] testified voluntarily during the Hearing, Ex. L (Inv.

14  337-TA-1093 Hearing Transcript), and Apple designated the deposition testimony of two Intel

15  employees[8] for trial, Ex. M (Inv. 337-TA-1093, Respondent Apple Inc.'s Final Admitted Exhibit

16  List) at 17. Apple and Intel were also represented by the same counsel during the 1093

17  Investigation. Ex. N (337-TA-1093 Notice of Limited Appearance on Behalf of Non-Party Intel

18  Corporation).

19  　　**B.**　　**Discovery From Intel In The 2398 Litigation**

20  　　　　　1.　　Intel Delayed Making Critical Discovery Available for Qualcomm to

21  　　　　　　　Amend its Infringement Contentions

22  　　　Discovery in the 1093 Investigation was governed by a protective order that limited the use

23  of any materials. In particular, the 1093 protective order required the parties "to utilize such

24  confidential business information solely for purposes of this investigation." Ex. O at 4. Because

25  Intel produced discovery in the 1093 Investigation under the terms of this protective order,

26

27  　　[7]  Aicha Evans and Werner Schelmbauer.

28  　　[8]  Werner Schelmbauer and Steven Bowers.

1    Qualcomm served Intel with a subpoena *duces tecum* in the 2398 Litigation in August 2018
2    seeking discovery similar to what Intel had produced in the 1093 Investigation. *See* Ex. Q at
3    Request No. 17 (seeking all information produced in the 1093 Investigation). In general, this
4    subpoena sought documents relating to the design, development, and implementation of the
5    accused functionality, and/or RF transceivers and LNA modules Intel has developed for use in the
6    accused Apple mobile devices. *See, id.* at Request No. 3.

7         On October 5, 2018, Intel responded to Qualcomm's subpoena by stating that Intel would
8    rely on its prior production of materials in the 1093 Investigation, but that Intel would not yet
9    **consent** to use of those materials in the 2398 Litigation until a supplemental protective order was
10   entered. Specifically, Intel counsel stated that to satisfy Qualcomm's subpoena, materials "Intel
11   has already produced in ITC Investigation Nos. 337-TA-1065 and 337-TA-1093 may be used in
12   connection with this action *subject to an acceptable amendment to the Protective Order in this*
13   *Action.*" Ex. Q (Response to Requests) (emphasis added). This October 2018 response effectively
14   prohibited Qualcomm from using any information that Qualcomm had previously received in the
15   1093 Investigation until the Court approved another protective order.

16        Qualcomm diligently negotiated a supplemental protective order with Intel. However,
17   even though the court entered the requested Supplemental Protective Order on November 8, 2018,
18   Intel's counsel did not authorize Qualcomm to use the 1093 discovery until November 27, 2018.

19        During this period—and after the September 4, 2018 deadline for Qualcomm to amend its
20   infringement contentions as of right—Apple released a host of new devices: the iPhone XS,
21   iPhone XS Max, and iPhone XR on September 21, 2018 and the iPad Pro 11 and iPad Pro 12.9 on
22   October 30, 2018. These products contain ███████████████████████████████████
23   ██████████████████████████████████. Intel provided some technical
24   discovery on the Intel PMB 5762 during the 1093 Investigation, but Qualcomm was not permitted
25   to use that information in the 2398 Litigation until Intel consented—three months after
26   Qualcomm's initial request. By that time, the deadline to amend its infringement contentions as of
27   right had passed. Qualcomm has therefore filed a motion to amend its infringement contentions to
28   include the accused functionality in the Intel PMB 5762 transceiver. *See* Case. No. 3:17-cv-

-6-                                              Case No. MISC

02398, Dkt. No. 173-1 (Qualcomm's Memorandum of Points Of Authorities In Support Of Its Motion For Leave To Amend Its Infringement Contentions) ("Mot. to Amend").[9]

2.  <u>Intel Continues to Delay Producing Responsive Documents, Despite Qualcomm's Efforts to Significantly Narrow the Scope of Its Requests</u>

On January 18, 2019, Qualcomm served on Intel the document subpoena that is at issue in this dispute.[10]  *See* Ex. A.  This targeted subpoena sought documents on topics that had not been significant areas of focus during the 1093 Investigation, including damages and certain technical information.  The parties met and conferred twice before Intel responded to the subpoena, on February 1 and February 5, 2019.  During the second meet and confer, Qualcomm provided additional information regarding the scope of the requested discovery.  In a subsequent email, Qualcomm said it "remains willing to help limit any alleged burden on Intel through further discussions both before and after Intel serves its responses." Ex. D (Feb. 5, 2019 Email from Summers).  In the spirit of compromise, Qualcomm also set forth suggestions to narrow the scope of the requests and limit duplicative discovery. *Id*. *First*, Qualcomm narrowed the scope of Request Nos. 53–67 to specific categories of technical documents that had not been produced in the 1093 Investigation or needed to be updated.  Specifically, Qualcomm stated that no additional document production was necessary as to these requests with only narrow exceptions for incomplete, missing, or out-of-date information. *Second*, Qualcomm proposed limiting additional document requests (and deposition testimony) to five discrete subject matters related to damages and injunctive relief, which had not been the subject of the prior actions. *Third*, Qualcomm proposed that Intel, Qualcomm and Apple enter into a joint stipulation regarding the authenticity

---

[9]  As explained in that motion, Apple has consented to the addition of these products for the three patents that do not directly implicate Intel components, but inexplicably does not consent for the '356 patent, which includes Intel.

[10]  The January 18, 2019 subpoena also sought the deposition testimony at issue in Intel's pending motion to quash.

-7-

Case No. MISC

1   of produced documents (to obviate the need for an authentication deposition) and an agreement to

2   cross-use previously produced materials. *Id.*[11]

3       Despite Qualcomm's substantial efforts to identify the limited information it is requesting

4   beyond what has been previously produced in other cases, Intel has produced nothing in response.

5   Qualcomm and Intel had a third meet and confer to discuss the document requests on February 20,

6   2019, during which Intel stated that it had neither looked for nor produced the requested material

7   because "it has fully satisfied its obligations through its cross-use production of documents from

8   the 1065 and 1093 ITC Investigations." Ex. S (Feb. 21, 2019 Email from O'Grady).  Intel also

9   asserted materials related to the PMB 5762 were not relevant to the 2398 Litigation, citing to case

10  law regarding *future unreleased* products. *Id.*  The PMB 5762, however, is implemented in

11  products that have now been released.  Intel did not articulate any other basis for not providing the

12  requested information.  Nor did Intel articulate how its past production of information in the ITC

13  Investigations fully satisfies the requests (to the extent not related to the PMB 5762), particularly

14  in light of the fact that these requests, as narrowed, only seek discrete categories of technical

15  documents Qualcomm has identified as missing or outdated, or information that had not been an

16  area of focus in prior litigations between the parties.  Instead, Intel waited weeks before

17  demanding Qualcomm provide the same information regarding the requests that Qualcomm had

18  already provided in its February 5, 2019 email. *Id.*

19      Although Intel's inaction suggests it is simply seeking to delay discovery in the 2398

20  Litigation, Qualcomm sought to avoid motion practice by sending another letter to (1) request a

21  date by which Intel would produce the damages-related discovery; (2) explain the PMB 5762 is a

22  released product that is functionally similar to components in the accused products and thus a

23  proper subject of discovery, and (3) describe again the limited, specific technical information it

24  seeks in response to Request Nos. 53–67. Ex. E (Feb. 28, 2019 Ltr. from Summers).

25

26     [11]  Prior to Intel's response, Qualcomm and Apple had entered into a Joint Cross-Use
    Stipulation in the 1093 Investigation.  This stipulation, however, did "not include documents

27  produced by third parties subject to the Protective Order in this Investigation absent the express
    agreement of the producing third parties."  Ex. R (Joint Cross-Use Stipulation) at 3.  Express

28  consent of third parties was also required to use their testimony in this litigation. *Id.* at 1.

1    Intel has neither agreed to produce this information, nor provided a date by which it

2    intends to make a production responsive to these requests.  Accordingly, Qualcomm has no choice

3    but to seek an order compelling Intel to produce documents responsive to the subpoena, as

4    narrowed.  In particular, Intel should be compelled to produce documents and information

5    responsive to three categories of discovery that are relevant to the 2398 Litigation and have not

6    been produced in the companion Investigations.

7    *First*, Intel should be compelled to produce, or make available for inspection, technical

8    information in response to Request Nos. 53–67 as follows:



20    These requests are relevant, at a minimum, to infringement of the asserted patents and Apple's

21    non-infringement arguments.

22    *Second*, Intel should be compelled to provide discovery regarding the PMB 5762 that is

23    responsive to Request Nos. 29–31, 33, 44, 49, 53–56, and 64–67.  The PMB 5762 is a released

24    Intel component that has been implemented in Apple products that were released in 2018—

25    products that are the subject of Qualcomm's pending motion to amend its infringement

26

27    [12]  Qualcomm's February 28 letter identified, as an example, the wrong enable signals for the

28    PMB 5762.  Ex. E.  The correct enable signals are identified in the cited document.

1    contentions.  The PMB 5762 is also functionally similar to the Intel RF transceivers that are

2    implemented in the accused Apple products.

3           *Third*, Intel should be compelled to produce information regarding five discrete subject

4    matters, related to damages and injunctive relief, that have not been the subject of the prior

5    actions:

6    - The demand for and benefits of the four technology areas described in the
             subpoena (RFPs 19–28, 52);
7
8    - The requirements of the products developed, particularly from Apple
             (RFPs 26–29, 40–43);

9    - Information about Intel design around efforts or non-infringing
             alternatives (RFPs 44);
10
     - Comparison of performance of different RF transceivers (RFP 49); and
11
     - Information about how Intel bundles sales of RF transceivers with
12           baseband processors, and how Intel designs RF transceivers to work with
             baseband processors (RFPs 36–37, 42–43, 50–52).

13   These areas focus on damages and injunctive relief in the 2398 Litigation that are unique to that

14   action.  For example, Request Nos. 19–29, 40–44, 49, and 52 seek documents regarding, among

15   other issues, the availability of non-infringing alternatives, which is an important factor when

16   determining reasonable royalties.  *Spring Comm'ns Co., LP v. Time Warner Cable, Inc.*, 2018 WL

17   6266319, at *5 (Fed. Cir. Nov. 30, 2018) ("the absence of non-infringing alternatives would

18   strengthen the patentee's hand in such a [hypothetical] negotiation"); *Georgia-Pacific Corp. v.*

19   *U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (Factor 9: "The utility and

20   advantages of the patent property over the old modes or devices, if any, that had been used for

21   working out similar results.").  Request Nos. 36–37, 42–43, and 50–52 seek documents that would

22   implicate *Georgia-Pacific* Factor 6, which is commonly considered to determine reasonable

23   royalties.  *See Georgia-Pacific Corp.*, 318 F. Supp. at 1120 ("The effect of selling the patented

24   specialty in promoting sales of other products of the licensee; that existing value of the invention

25   to the licensor as a generator of sales of his non-patented items; and the extent of such derivative

26   or convoyed sales.").

27

28

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs discovery of non-parties by subpoena and "authorizes the issuance of a subpoena commanding a non-party to . . . produce designated documents, electronically stored information or tangible things in that non-party's possession, custody, or control or permit the inspection of premises." *Negotiated Data Solutions, LLC v. Dell, Inc.*, No. C09-80012, 2009 WL 733876, at *2 (N.D. Cal. Mar. 17, 2009) (citing Fed. R. Civ. P. 45(a)(1)(A)(iii)). If the subpoenaed party objects to the subpoena, "the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i).

### IV.    ARGUMENT

As set forth in more detail below, Intel should be compelled to produce relevant documents within its possession, custody, or control in response to Qualcomm's January 18, 2019 subpoena.

#### A.    Qualcomm's Document Requests Seek Information That Is Highly Relevant, Necessary, And Narrowly Tailored

"The scope of discovery through a Fed. R. Civ. P. 45 subpoena is the same as that applicable to Fed. R. Civ. P. 34 and the other discovery rules." *Id*. Specifically, Federal Rule of Civil Procedure 45 allows parties to "obtain discovery about any non-privileged matter that is relevant to any party's claim or defense" from non-parties. *Id*. "Relevance" is interpreted liberally and includes "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Sirota v. Penske Truck Leasing Corp.*, No. C05-03296 SI, 2006 WL 708910, at *1 (N.D. Cal. Mar. 17, 2006) (citation and internal quotation marks omitted). When a court's "only connection with a case is supervision of discovery ancillary to an action in another district," the court "should be 'especially hesitant to pass judgment on what constitutes relevant evidence thereunder. Where relevance is in doubt . . . the court should be permissive." *Compaq Computer Corp. v. Packard Bell Electronics, Inc.*, 163 F.R.D. 329, 335 (N.D. Cal. 1995) (quoting *Truswal Systems Corp. v. Hydro–Air Engineering, Inc.*, 813 F.2d 1207, 1211–12 (Fed. Cir. 1987) (citation omitted)).

1    As detailed below, each of Qualcomm's document requests, as narrowed, targets
2  information that is highly relevant to Qualcomm's case in the 2398 Litigation.  Thus, Intel has no
3  legitimate basis for failing to produce documents responsive to Qualcomm's properly served
4  subpoena.

5         1.    Technical Documents Not Produced In The Companion Investigations
6    Request Nos. 53–67 seek documents regarding various technical topics at issue in the 2398
7  Litigation.[13]  During the meet and confer process, Qualcomm informed Intel that no additional
8  document production was necessary as to these requests, with only narrow exceptions for
9  incomplete, missing, or out-of-date information. Ex. D (Feb. 5, 2019 Email from Z. Summers);
10  Ex. C (Feb. 19, 2019 Email from Z. Summers).  Qualcomm and Intel's cross-use agreement would
11  cover documents previously produced in the 1093 Investigation.  However, Qualcomm seeks
12  updated versions of certain technical materials that were produced in the 1093 Investigation but
13  are now out-of-date.  Qualcomm is also seeking certain information that was not produced by
14  Apple during the 1093 Investigation.  While this information is not relevant to Qualcomm's
15  infringement claims, Apple took non-infringement positions based on the absence of this
16  information and so it should be produced to remove any doubt.

17    Technical information concerning Intel components is relevant because it provides critical
18  implementation details regarding certain functionalities or configurations described in the asserted
19  patents.  The components Intel provides to Apple, which Apple uses and also incorporates into
20  consumer products it sells to the public (e.g., iPhones) in an infringing manner, implement
21  functionalities and configurations relevant to several of the asserted claim limitations.  Because
22  Intel's components implement these functionalities and configurations, Intel is the best and only
23  source of this information.

24
25

26  _____
   [13] These requests seek narrow technical information related to Intel's RF components used, or
27  planned for use, in Apple mobile products from 2016 through 2018, including the PMB 5762.
   Intel's objections to these requests based on the purported non-relevance of the PMB 5762 is
28  addressed in Section IV.A.2 *infra*.

1     <u>Request Nos. 53 and 54</u> seek the most recent version of the ███████████████

2 ████████████████████████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████████████████████

5 ███████████████████ *See* Ex. T (Schelmbauer Dep. Tr.) at 62:8–12 (██████████████

6 ███████████████████████████████████████████████████████████████████

7 ████████████████████████████████████████████████████████████); *id.* at 65:12–15 (████████

8 ████████████████████████████████████████████████████████████████); *id.*

9 at 66:17–21 (███████████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████████). These

11 documents are undisputedly relevant to Qualcomm's infringement claims in the 2398 Litigation,

12 and Intel—the creator of these documents—is best positioned to provide this discovery. Indeed,

13 Intel's corporate representative testified that, ████████████████████████████████████████

14 ████████████████████████████████████████████████████████████████████

15 ██████████████. *Id.* at 63:8–14, 65:16–25, 66:25–27:11. And while the ████████████████

16 may have been distributed to third parties, the documents in Intel's possession may differ from

17 those distributed to Apple.[14]

18     Furthermore, this discovery is not duplicative of Intel's prior productions during the 1093

19 Investigation. First, Intel never produced some of these documents for particular products. For

20 example, Intel only produced a version of the ████ for the PMB 5750. Intel did not produce any

21 version of the ████ for the PMB 5757 or PMB 5762. Similarly, Intel never produced a full

22 version of the ████ for the PMB 5762. Second, even when Intel produced the documents for each

23 of the products, it is not clear they produced the final or most recent versions of the documents. █

24 ████████████████████████████████████████████████████████████████████

25 ████████████████████████████████████████████████████████████████████

26 ████████████████████████████████████ Ex. T (Schelmbauer Dep. Tr.) at

27     ——————————
[14]   There is also no reason to believe Apple has possession of the most recent version of ████████

28 ████████████.

Case No. MISC

1    63:19–22 ████████████████                                              124:14–22 ████████

2    ████████████████████████████████████, 137:9–12 ████████████

3    ████████████████████████████████████. Intel should be compelled

4    to produce this information, or—to the extent it contends that the most recent versions have been

5    produced—identify where in the production the documents are located.[15]

6         Request No. 55 seeks the firmware source code for the PMB 5762.  This firmware is

7    relevant to Apple's claims of non-infringement.  For example, Apple and Intel witnesses claim

8    that the PMB 5750 does not infringe because ███████████████████████████████████

9    █████████████████████████████████████████████████████████████████████████

10   █████████████████████████████████████████████████████████████████████████

11   █████████████████████████████████████████████████████████████████████████

12   █████████████████████████████████████████████████████████████████████████

13   █████████████████████████████████████████████████████████████████████████

14   █████████████████████████████████████████████████████████████████████████

15   ███████████████████████████████████████████████ Intel refused to produce this

16   firmware in the 1093 Investigation for the PMB 5762 because the product was under development.

17   Ex. U (May 21, 2018 Email from Lantier).  Now that the product has been released, Intel should

18   be compelled to produce the firmware it previously withheld.

19        Request No. 56 seeks information sufficient to show ██████████████████████

20   ██████████████████████████████. This is relevant to infringement.  In

21   particular, Qualcomm's contention is that the amplifier circuitry coupled to each receive port in

22   the PMB 5762 represents an instance of infringement.  The asserted claims require the input signal

23   received by the accused amplifier stages to be "employing carrier aggregation."  The ████████████

24   ████████████████████████ help to establish the functionality of each port, including which

25   specific carrier aggregation configurations (e.g., intra-band carrier aggregation) are supported by

26   each receive port.  Intel did not produce this information for the final version of PMB 5762 during

27   ───────────────────
     [15]   It is of course impossible for Qualcomm to determine whether a produced document

28   reflects the final version of that document without having access to all of Intel's internal materials.

1    the 1093 Investigation as the product was still under development.  Since the close of discovery in

2    that Investigation, however, the product was finalized and released in the 2018 iPhones.  Intel

3    should therefore be compelled to produce information related to the final design of the PMB 5762.

4              Request Nos. 57–63 seek information related to the control signals for the amplifiers

5    within the receiver in the Intel PMB 5750 and the Intel PMB 5757 RF transceivers.  The control

6    signals, and the question of whether the control signals can be turned on and off independently, are

7    relevant to the question of whether the RF transceivers infringe Qualcomm's patents.  Indeed, as

8    discussed above, Apple's non-infringement arguments are centered around the operation of these

9    control signals.  Even though Intel does not dispute the relevancy of these narrowly tailored

10   requests, Intel has produced nothing in response, contending that "it has fully satisfied its

11   obligations through its cross-use production of documents from the 1065 and 1093 ITC

12   investigations."  Ex. S (Feb. 21, 2019 Email from O'Grady).  Qualcomm has searched Intel's ITC

13   document production and has confirmed certain deficiencies.  For example, Intel's production in

14   the 1065 and 1093 Investigations related to these control signals appears to be limited to technical

15   specifications, such as schematics, and certain versions of the ██████ and the ██████.  Qualcomm,

16   however, is seeking information regarding the design, implementation, testing, and evaluation of

17   the control signals.  ████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████████

19   ██████████████████████████████                                    See Ex. T

20   (Schelmbauer Dep. Tr.) at 121:7–122:21; Ex. W (Fay Reb. Rep. (June 29, 2018)) at 87–88.  But

21   information about such design, testing, and evaluation is not reflected in the technical

22   specifications produced by Intel in the ITC Investigations.

23             Request Nos. 64–67 seek similar information regarding the control signals in the Intel

24   PMB 5762.  As described above, this information is relevant to Qualcomm's infringement claims.

25   This product was released after the close of discovery in the 1093 Investigation, so Qualcomm is

26   seeking supplemental technical documents reflecting updated information regarding the control

27   signals in the Intel PMB 5762.  Moreover, the functioning of the control signals in the Intel PMB

28   5762 is also relevant to Qualcomm's damages analysis, as discussed in more detail below.

2.      <u>Documents Related to Intel's PMB 5762 And Future Products</u>

Request Nos. 29–31, 33, 44, 49, 53–56, and 64–67[16] seek, among other things, information related to various Intel RF components used in Apple mobile devices, including the Intel PMB 5762 ("█████"). The PMB 5762 is a *released* Intel component used within the Apple mobile devices released in 2018. These 2018 Apple mobile devices are now the subject of Qualcomm's motion to amend its infringement contentions—a motion that was necessitated by Intel's failure to provide, or allow cross-use of, the requested discovery prior to the September 4, 2018 deadline for amendments of right. *See* Case. No. 3:17-cv-02398-DMS-MDD (S.D. Cal.), Dkt. No. 173-1 (Qualcomm's Memorandum of Points Of Authorities In Support Of Its Motion For Leave To Amend Its Infringement Contentions).

Even if Qualcomm had not moved to amend its infringement contentions, the PMB 5762 would be fairly discoverable for comparison to other Intel transceivers already at issue in the 2398 Litigation, such as Intel's PMB 5750 ("█████") and PMB 5757 ("█████"), transceivers. It is thus a proper subject of discovery. *See Aristocrat Techs. v. Int'l Game Tech.*, No. 06-cv-03717-RMW (RS), 2009 WL 3573327, at *5 (N.D. Cal. Oct. 30, 2009). Intel's PMB 5762 component was also at issue in the 1093 Investigation—an Investigation in which Intel not only participated through public interest statements, but to which it also sent witnesses to testify during the hearing.[17] Intel cannot dispute that Qualcomm's infringement contentions and the 1093 Investigation provide ample notice and detailed description of its infringement theory.

Intel has nonetheless refused to produce *any* documents related to the PMB 5762 in the 2398 Litigation, contending that Qualcomm is not entitled to any discovery regarding products that are not yet officially accused in infringement contentions. Ex. S (Feb. 21, 2019 Email from O'Grady). Intel's position is not well-founded: Intel's efforts at creating a bright line rule

---

[16]   Qualcomm has agreed to limit the scope of Request Nos. 53–56 and 64–67 to specific technical information regarding the PMB 5762. Ex. E (Feb. 28, 2019 Ltr. from Z. Summers). These requests are addressed above.

[17]   Although the PMB 5762 component was at issue in the 1093 Investigation, discovery was limited since it was a product in development. Intel should be compelled to provide information regarding the final, released product.

1  prohibiting discovery of products or components not identified in original infringement

2  contentions has been repeatedly rejected, including in multiple decisions by this Court. *See L.G.*

3  *Philips LCD Co., Ltd. v. Tatung Co.*, No. 07-cv-80073-WHA, 2007 WL 869256, at *2 (N.D. Cal.

4  Mar. 20, 2007) (finding the scope of the third-party subpoena to be reasonable, thus "the Court

5  will not impose any limitations regarding Accused or Non-Accused Products, or any other

6  limitations, on it."); *In re Google Litig.*, No. C 08-03172, 2011 WL 286173, at *5 (N.D. Cal. Jan.

7  27, 2011) ("[E]ven if the court's ultimate claim construction establishes that non-link analyses do

8  not practice any limitation of any asserted claim, the operation of such analyses may nevertheless

9  be material for purposes of comparing the relative value of infringing and non-infringing analyses

10  within Google's search functionality under a *Georgia-Pacific* reasonable royalty analysis."); *see*

11  *also DR Sys., Inc. v. FujiFilm Med. Sys. USA, Inc.*, No. 06cv417 JLS (NLS), 2008 WL 1734241,

12  at *3 (S.D. Cal. Apr. 10, 2008).  Moreover, the cases Intel put forth during meet and confer

13  negotiations relate to *future* products, not existing devices that are substantially similar to those in

14  this case.[18]  Intel fails to take into account that the PMB 5762 has already been fully developed

15  and released.

16        Moreover, the Rule 26 relevancy standard is broad, and non-accused products may

17  properly be the subject of a subpoena if such discovery is likely to lead to relevant evidence. *See*

18  *Aristocrat Techs*, 2009 WL 3573327, at *5 (granting motion to compel inspection of a limited

19  number of unaccused machines to "uncover whether certain additional [] products have the same

20  or substantially similar features as the accused products"); *DR Sys., Inc.*, 2008 WL 1734241, at *3

21  ("[P]roducts and services 'reasonably similar' to those accused in the [infringement contentions]"

22  are proper subjects of discovery.) (citing *Epicrealm Licensing, LLC v. Autoflex Leasing, Inc.*, 2007

23  WL 2580969, at *3 (E.D. Tex. 2007)); *L.G. Elec., Inc. v. Q-lity Computer, Inc.*, 211 F.R.D. 360,

24  368 (N.D. Cal. 2002)).  Especially where the discovery of not-yet-accused products is limited and

25  narrowly tailored, the balance of "the hardship to be borne by [the producing party] against the

26

27

_____

28     [18]   Ex. S (Feb. 21, 2019 Email from O'Grady) (citing cases).

-17-                              Case No. MISC

1  likelihood that the proposed [discovery] will yield relevant and admissible evidence . . . tips in"

2  favor of compelling the discovery. *See Aristocrat Techs.*, 2009 WL 3573327, at *5.

3       Intel's position that the "PMB 5762 is an Intel component that is not incorporated into any

4  Apple product accused in the underlying litigation" is also factually wrong. Ex. S (Feb. 21 Email

5  from O'Grady). The PMB 5762 is part of newly-released Apple products that Apple has

6  *consented* to Qualcomm adding to the infringement contentions here. *Compare, e.g.*, Case. No.

7  3:17-cv-02398-DMS-MDD (S.D. Cal.), Dkt. No. 173-1 (Mot. to Amend) at 17, 22 (adding iPhone

8  XS, iPhone XS Max, and iPhone XR as accused products for '002 and '674 patents) *with* Dkt. No.

9  192 (Apple's Opp. to Mot. to Amend) (not contesting addition of iPhone XS, iPhone XS Max, and

10  iPhone XR with respect to '002 or '674 patent). And even if the court in the 2398 Litigation were

11  to deny Qualcomm's pending motion to amend its infringement contentions to add the PMB 5762,

12  its operation, design, and structure would all be relevant to other issues in the case, such as the

13  relative value of designs other than the PMB 5750 and PMB 5757, and the value placed on various

14  features such as battery efficiency. Thus, the documents Qualcomm seeks from Intel regarding the

15  PMB 5762 are highly relevant to damages, and the Court should order Intel to produce them

16  accordingly.

17         3.     <u>Documents Related to Damages and Injunctive Relief</u>

18       Request Nos. 19–29, 36–37, 40–44, and 49–52 collectively seek information that is

19  relevant to damages and injunctive relief in the 2398 Litigation. As noted above, these are unique

20  to that action and were not the focus of the 1093 Investigation. Qualcomm explained this to Intel

21  in the meet and confer process, and offered to limit these requests to narrowed categories of clear

22  relevance. Ex. D (Feb. 5, 2019 Email from Z. Summers). Each of those categories addresses

23  information that is unquestionably relevant:

24       <u>Request Nos. 19–28 and 52</u> seek information regarding the demand for the accused

25  functionalities. Demand is an important component of calculating damages. For example,

26  demand implicates at least the four following *Georgia-Pacific* factors used to determine a

27  reasonable royalty: Factor 8 ("The established profitability of the product made under the patent;

28  its commercial success; and its current popularity."); Factor 9 ("The utility and advantages of the

1   patent property over the old modes or devices, if any, that had been used for working out similar

2   results."); Factor 10 ("The nature of the patented invention; the character of the commercial

3   embodiment of its as owned and produced by the licensor; and the benefits to those who have used

4   the invention."); and Factor 11 ("The extent to which the infringer has made use of the invention;

5   and any evidence probative of the value of that use."). *See Georgia-Pacific Corp.*, 318 F. Supp. at

6   1123. Intel is the manufacturer of the RF components in Apple's devices, so its internal

7   assessment of demand for the accused functionalities may be relevant to determining damages.

8   Request Nos. 26–29 and 40–43 seek information regarding requirements for the products

9   developed by Intel, particularly those requirements communicated by Apple. Responsive

10  documents could show that Apple required Intel to include the patented features in its components,

11  which could be used to support willful infringement and demonstrate the value Apple placed on

12  the patented technologies. *Panduit Corp. v. Stahlin Bros Fibre Works, Inc.*, 575 F.2d 1152, 1160

13  (6th Cir. 1978) ("GP's calculated infringement of Weldtex is an admission by conduct that it

14  regarded Weldtex as occupying a uniquely favorable position in the market.") (quoting *Georgia-*

15  *Pacific Corp.*, 318 F. Supp. at 1123). This information would be relevant to determine a

16  reasonable royalty as well as enhanced damages. *Id.* Evidence regarding Apple's requirements

17  for Intel's RF components would also be probative of whether non-infringing alternatives were

18  available during the relevant time period. This also is relevant for determination of a reasonable

19  royalty. *See Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1304 (Fed. Cir.

20  2015) (The hypothetical negotiation seeks to determine "what it would have been worth to the

21  defendant, as it saw things at the time, to obtain the authority to use the patented technology,

22  considering the benefits it would expect to receive from using the technology *and the alternatives*

23  *it might have pursued.*"); *Spring Comm'ns Co., LP v. Time Warner Cable, Inc.*, 2018 WL

24  6266319, at *5 (Fed. Cir. Nov. 30, 2018) ("the absence of non-infringing alternatives would

25  strengthen the patentee's hand in such a [hypothetical] negotiation"); *ViaSat, Inc. v. Space*

26  *Systems/Loral, Inc.*, No. 3:12-CV-00260-H (WVG), 2014 WL 11813868, at *1–2 (S.D. Cal. Feb.

27  21, 2014) (citing *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571–72 (Fed. Cir. 1996); *see also*

28  *Georgia-Pacific Corp.*, 318 F. Supp. at 1120 (Factor 9: "The utility and advantages of the patent

1  property over the old modes and devices, if any, that had been used for working out similar

2  results.").

3       Request Nos. 44 and 49 seek information regarding the availability of non-infringing

4  alternatives and Intel's efforts to design around the patents, as well as comparison of performance

5  of different RF transceivers which would help elucidate whether such other transceivers would be

6  viable alternatives.  As explained with respect to Request Nos. 26–29 and 40–43, the availability

7  of non-infringing alternatives is relevant to damages.

8       Request Nos. 36–37, 42–43, and 50–52 seek information about how Intel bundles sales of

9  RF transceivers with baseband processors, and how Intel designs RF transceivers to work with

10  baseband processors.  This information that would be relevant to, among other things, the value of

11  the accused functionalities as a generator of sales of non-patented items.  This information is

12  relevant to damages because the extent to which Intel's RF transceivers and baseband processors

13  are designed to function together, and are bundled together, could affect the measure of damages.

14  Indeed, *Georgia-Pacific* Factor 6 is commonly relied upon in determining a reasonable royalty,

15  and speaks directly to this issue:  "The effect of selling the patented specialty in promoting sales of

16  other products of the licensee; that existing value of the invention to the licensor as a generator of

17  sales of his non-patented items; and the extent of such derivative or convoyed sales."  *Georgia-*

18  *Pacific Corp.*, 318 F. Supp. at 1120.  Thus, as recognized by the Federal Circuit and other courts,

19  under certain circumstances, a royalty on sales of items not directly accused of infringement is

20  proper to "fully compensate" for infringement by accused items.  *See Fresenius USA, Inc. v.*

21  *Baxter Intern., Inc.*, 582 F.3d 1288, 1303 (Fed. Cir. 2009); *see also Realtime Data LLC v.*

22  *Echostar Corp.*, No. 6:17-CV-00084-JDL, 2018 WL 6266301, at *6–7 (E.D. Tex. 2018) (finding

23  royalty base including sales of certain unpatented computer terminals proper where "a functional

24  relationship" existed to the patented invention); *Realtime Data LLC v. NetApp, Inc.*, No. 6:16-CV-

25  00961-RWS, 2017 WL 5756863, at *2–4 (E.D. Tex. 2017) (same for software and maintenance

26  services); *Oracle America, Inc. v. Google Inc.*, No. C 10-03561 WHA, 2011 WL 6055505, at *4

27  (N.D. Cal. Dec. 6, 2011) (finding proper for expert to upwardly adjust royalty rate for "collateral

28  sales").  The information Qualcomm seeks here also could be relevant to any apportionment of

-20-                                                   Case No. MISC

1   damages, if necessary, to account for the benefits of the patented features. *Exmark Mfg. Co. v.*

2   *Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1348 (Fed. Cir. 2018) ("When the

3   accused infringing products have both patented and unpatented features, measuring this value

4   requires a determination of the value added by such features.").

5        In response to Qualcomm's proposal to narrow the scope of these document requests (as

6   described above), Intel maintained "that Qualcomm is continuing to pursue overbroad, duplicative,

7   and irrelevant discovery, even after securing Intel's agreement to cross-use of the significant

8   volume of discovery provided in the parallel 1093 Investigation." Ex. B (Feb. 19, 2019 Email

9   from O'Grady). To date, Intel has not explained how its past production of information in the

10   1093 Investigation satisfies these requests, particularly given that monetary damages were not at

11   issue in that Investigation. *See, e.g.*, Section II.A.2 *supra*. Nor has Intel clarified its vague

12   assertions of non-relevance. In any event, as explained above, this information is undeniably

13   relevant to determining damages, and Intel is uniquely positioned to provide it.

14   **B.     Qualcomm Has Taken Reasonable Steps To Limit Intel's Burden Of**
      **        Compliance With Qualcomm's Document Requests**
15

16        In addition to being relevant, discovery must be "proportional to the needs of the case,

17   considering the importance of the issues at stake in the action, the amount in controversy, the

18   parties' relative access to relevant information, the parties' resources, the importance of the

19   discovery in resolving the issues, and whether the burden or expense of the proposed discovery

20   outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C)(iii); *see also Viacom Int'l, Inc. v.*

21   *YouTube, Inc.*, No. C 08-81029 SI, 2008 WL 3876142, at *5 (N.D. Cal. Aug. 18, 2008). At every

22   stage of this dispute, Qualcomm has sought to minimize any burdens the subpoena might place on

23   Intel, and repeatedly tried to engage Intel in constructive dialogue even before Intel's responses

24   were due. Qualcomm's narrowly-tailored document requests are proportional to the needs of the

25   2398 Litigation, and Intel will not suffer any undue burden in complying with Qualcomm's

26   subpoena.

27        As explained above, Qualcomm has made significant efforts to identify the limited,

28   specific technical information it is requesting beyond what has been previously produced in other

-21-

1  cases. *See* Section IV.A *supra*.  In fact, Intel's own corporate witness even testified to the ease at
2  which many of the requested documents could be identified.  Ex. T (Schelmbauer Dep. Tr.) at
3  64:11-65:7 ( ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ).  Yet despite
4  these efforts, Intel maintains its generalized, conclusory arguments that the requested discovery is
5  overbroad and irrelevant.  Ex. B (Feb. 19, 2019 Email from O'Grady).

6      Intel also suggests that complying with Qualcomm's document requests would be unduly
7  burdensome because Intel already agreed "to cross-use of the significant volume of discovery
8  provided in the parallel 1093 Investigation." *Id.*  But as Qualcomm explained several times,
9  Qualcomm is not asking Intel to provide documents that were requested and produced in the 1093
10 Investigation.  Instead, Qualcomm seeks documents regarding information that was ***not*** produced
11 in the ITC, including information not at issue in that Investigation.

12     Moreover, Qualcomm's requests are proportional to the needs of the case because they
13 seek documents exclusively within Intel's possession, custody, and control.  For example, as the
14 designer and supplier of RF components for Apple's mobile devices, Intel possesses technical
15 information for the RF components utilized by the accused devices.  Qualcomm cannot obtain this
16 information through other discovery.  Even if Apple also had this information (and it represents
17 that it does not), the information would still be discoverable by subpoena: "Third party discovery
18 is a time-honored device to get at the truth of a claim or defense," *L.G. Philips LCD Co., Ltd.*,
19 2007 WL 869256, at *2, and "there is no general rule that plaintiffs cannot seek nonparty
20 discovery of documents likely to be in defendants' possession . . . ." *Viacom Int'l, Inc.*, 2008 WL
21 3876142, at *2–4.

22     The measures Qualcomm has taken to reduce burdens on Intel more than address any claim
23 of undue burden from compliance.  And with respect to the Court's other considerations under
24 Rule 26, the amount in controversy is quite large due to the size of the parties and the scope of the
25 alleged infringement.  The issues at stake are also important not only to Qualcomm and Apple, but
26 also to customers and participants in the baseband chipset and mobile device markets.  Further,
27 Intel is a corporation that generated more than $18 billion in the last fiscal quarter, Ex. V, and has
28 already devoted considerable energy and resources to inject its positions into Qualcomm's legal

1  disputes.  In these circumstances, Qualcomm respectfully submits that Intel has no good basis for

2  resisting compliance with Qualcomm's subpoena, as limited, on the grounds of undue burden,

3  duplicity, or otherwise.

4  **V.      CONCLUSION**

5         For the reasons set forth herein, Qualcomm respectfully asks the Court issue an order

6  compelling Intel to comply with the subpoenas, as modified to reflect the requests outlined in the

7  Proposed Order that accompanies this Motion.

8

9  DATED: March 6, 2019              By:  _____

10                                        Andrew M. Holmes

11                                   **QUINN EMANUEL URQUHART &**
                                     **SULLIVAN, LLP**
12

13                                   Andrew M. Holmes (Bar No. 260475)
                                     drewholmes@quinnemanuel.com
14                                   50 California Street, 22nd Floor
                                     San Francisco, California 94111-4788
15                                   Telephone:  (415) 875-6600
                                     Facsimile:   (415) 875-6700
16

17                                   Patrick D. Curran (Bar No. 241630)
                                     patrickcurran@quinnemanuel.com
18                                   51 Madison Avenue, 22nd Floor
                                     New York, New York 10010
19                                   Telephone:  (212) 849-7000
                                     Facsimile:   (212) 849-7100
20

21                                   Zachariah Summers (Bar No. 255384)
                                     zachsummers@quinnemanuel.com
22                                   865 South Figueroa Street, 10th Floor
                                     Los Angeles, California 90017
23                                   Telephone:  (213) 443-3000
                                     Facsimile:   (213) 443-3100
24

25                                   *Attorneys for Plaintiff*
                                     QUALCOMM INCORPORATED
26

27

28